ANDREW STADIN v. BRITA HELIN and Others.

June 9, 1899.

Nos. 11,630—(54).

### Action to Fix Boundaries—G. S. 1894, §§ 5823–5829.

The statute providing for fixing and establishing boundary lines of land (G. S. 1894, §§ 5823–5829) was not designed merely to establish the location of the original government or other line between the parties, but to establish the present boundary line between them according to their respective existing rights of property; and hence the court is required to

try and determine adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines involved.

## Same—Defense of Adverse Possession.

In such an action it was therefore error to strike out of the answer a defense that the defendant had acquired title to the land in dispute by adverse possession; but this error was without prejudice, inasmuch as both parties subsequently voluntarily litigated the issue, and the court determined it on the merits.

## Lost Corner—Inconsistent Field Notes.

Where a government corner is lost or obliterated, so that resort must be had to the government field notes for the purpose of determining its location, but these field notes are inconsistent, and cannot be reconciled, there is no universal rule that certain ones shall be preferred to the others, but, as in a case where living witnesses contradict each other, those should be accepted as correct which, under all the circumstances, are most entitled to credit, and most likely to be in accordance with the actual facts.

## Witness Tree.

A witness or bearing tree is not an established corner, but merely a designated object from which, in connection with the field notes, the location of the corner may be ascertained.

## Findings Sustained by Evidence.

Evidence considered, and *held* to justify the findings as to the original location of a government corner.

Action in the district court for Isanti county to determine boundary lines. The action was commenced against Peter Helin, but before the trial he died, intestate, and Brita Helin and others, who were his heirs at law, were substituted as defendants. The court also made an order bringing in L. L. Danielson and Andrew Danielson, who were interested parties. The case was tried before Tarbox, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendants, including the Danielsons, appealed. Affirmed.

*P. H. Stolberg*, for appellants.

Boundaries as established by the government surveyor, and returned and accepted by the government, control the description of

76 M.—32

patented lands, and mistakes in the surveys cannot be corrected by the judicial department of the government or state. Chan v. Brandt, 45 Minn. 93. The corner of a government subdivision is where the United States surveyor established it, whether the location be right or wrong. Beardsley v. Crane, 52 Minn. 537; Beltz v. Mathiowitz, 72 Minn. 443. Purchasers from the United States are bound by the descriptive calls, surveys, and plat designating what they buy. Chan v. Brandt, supra; Haydel v. Dufresne, 17 How. 23; Bates v. Illinois C. R. Co., 1 Black, 204, 206. This action is not one to straighten lines, but to ascertain the location in fact of the government corner. Doolittle v. Bailey, 85 Iowa, 398; Rollins v. Davidson, 84 Iowa, 237. The relocation of a lost corner or quarter post is without effect, unless there is proof that in relocating the rules prescribed by the United States statute and regulations adopted by the government thereunder have been complied with. Wilkeson v. Driver, 13 Wash. 610.

Field notes of original government surveys are competent in ascertaining where monuments are located, in case the government corner is lost or its original location cannot be found. Peterson v. Skjelver, 43 Neb. 663; Woods v. West, 40 Neb. 307. Known and visible monuments and compass courses called for in field notes must prevail over measurements. U. S. v. Murray, 41 Fed. 862; Yanish v. Tarbox, 49 Minn. 268; Titterington v. Trees, 78 Tex. 567; Curtis v. Aaronson, 49 N. J. L. 68; Goodman v. Myrick, 5 Or. 65; Vandusen v. Shively, 22 Or. 64; Robertson v. Masson, 26 Tex. 248; Schaeffer v. Berry, 62 Tex. 705, 714. Field notes returned by the government surveyor and accepted by the government must be taken as presumptively correct. Hanson v. Township, 4 S. D. 358. The original surveyor's footsteps must be followed if possible to find. Graham v. Dewees, 85 Tex. 395; Cox v. Finks (Tex. Civ. App.) 41 S. W. 95.

*Barker & Southerland*, for respondent.

The corners and boundaries returned by, not to, the surveyor general's office are the true corners and boundaries. Beaty v. Robertson, 130 Ind. 589; Doe v. Hildreth, 2 Ind. 274; Chapman v. Polack, 70 Cal. 487; Cornett v. Dixon (Ky.) 11 S. W. 660; Vance v.

Fore, 24 Cal. 436. Land must be identified and boundaries ascertained by the plats and public surveys. Brown v. Clements, 3 How. 650, 671; Gazzam v. Lessee of Phillips, 20 How. 372, 375. If, in applying calls, circumstances render it apparent that corners and distances called for are more certain guides than a natural object, they will prevail. Bigham v. McDowell, 69 Tex. 100. Where a mound is placed is a question of fact, and, unless there is a clear preponderance of evidence against the finding, it will not be disturbed. Dowdle v. Cornue, 9 S. D. 126. The court was bound to find that defendants had not established the tree to be a witness tree, for defendants were bound to prove the fact by a preponderance of evidence. Daskam v. Beemer, 64 Wis. 13; Dowdle v. Cornue, supra. The facts found are supported by the evidence. Hess v. Meyer, 73 Mich. 259; Woods v. West, 40 Neb. 307; Hess v. Meyer, 88 Mich. 339.

MITCHELL, J.

This action was brought under Laws 1893, c. 68 (G. S. 1894, §§ 5823–5829), to have the boundary line fixed and established between the lands of the plaintiff and those of the defendant. The plaintiff alleged that he owned the southwest $\frac{1}{4}$ of the southeast $\frac{1}{4}$, and the west $\frac{1}{2}$ of the southeast $\frac{1}{4}$ of the southeast $\frac{1}{4}$, of section 33, township 36, of range 23, and that the defendant owned the northwest $\frac{1}{4}$ of the northeast $\frac{1}{4}$, and the west $\frac{1}{2}$ of the northeast $\frac{1}{4}$ of the northeast $\frac{1}{4}$ of section 4, township 35, of range 23, according to government survey. It is the boundary line between these two tracts, which plaintiff asked to have established. It will be observed that this boundary line is the east and west township line between two government townships, the land alleged to be owned by the plaintiff lying in the north, and that of the defendant in the south, township. The main contention between the parties is as to where the section corner between sections 33 and 34 in township 36 and sections 3 and 4 in township 35 was located and established by the government survey, the defendant contending that it was located at a point in the middle of the highway $189\frac{3}{4}$ feet north of the point where plaintiff claims it was.

As a further and second defense the defendant alleged that, irre-

spective of the original location of the government corner, he had been in the actual, open, continuous, hostile, and exclusive possession of the land up to the point where he claims the corner was located for more than 15 years before the commencement of the action. The court struck out this second defense, on the ground, apparently, that in this action nothing could be tried and determined except the original location of the government line. This ruling forms the subject of the defendant's first assignment of error.

Upon the issue as to the location of the government section corner as fixed and established by the government surveys, the court found it to be substantially as claimed by the plaintiff. It is assigned as error that this finding was not justified by the evidence, in that the court, in establishing and fixing the line and corner, did not follow the rules laid down by the statutes of the United States and of this state. See R. S. (U. S.) §§ 2395–2399, and G. S. 1894, §§ 833–836.

The trial court was in error in striking out the "second defense" set up in the answer. The object of the act of 1893 is to provide a method of establishing disputed boundaries between adjoining landowners, and thereby determining their respective rights of property, and not merely to ascertain where the original government lines and corners were located. If the inquiry is to be limited to the latter, it is apparent that in many cases it would determine no right whatever; as, for example, where the parties by their acts have mutually agreed on and adopted a boundary line different from the original government line, or where one of them had, or claimed to have, acquired title by adverse possession to land on the other side of the government line. Hence section 5829 of the statutes provides that

"The court shall try and determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines involved."

The meaning of this language is too plain for argument. But what occurred subsequently rendered this error without prejudice. Notwithstanding that the so-called "second defense" had been

stricken out of the answer, the parties voluntarily litigated the issue, and the court found that the defendant and his grantors had been in the actual, open, continuous, exclusive, adverse possession for more than 15 years of a strip 1½ rods wide off the south side of the land in dispute (that is, a strip 1½ rods wide north of the government township line as originally located), and awarded him the strip on that ground; thus establishing and fixing the existing boundary between the parties 1½ rods north of the government line. This finding is not objected to by either party.

The disputed section corner was what is termed a "lost corner," the monument or stake set by the government surveyors having been removed or destroyed, and there being no direct evidence as to where it had been placed. Hence it was a case where resort must be had to the field notes of the government surveyors. This corner was established in 1849 by the surveyors who divided the territory into townships, and became a section corner when the townships were subdivided into sections. R. S. (U. S.) § 2395, subd. 2. Township 35 was subdivided in 1854, and township 36 in 1857. The government field notes called for two witness or bearing trees at the disputed corner, and the evidence on behalf of the defendant on that issue consisted exclusively of testimony tending to identify an existing tree as one of these bearing trees by witnesses who testified to having seen in former years the marks of the government surveyors upon it. If this was in fact one of the witness trees, the courses and distances from it contained in the government field notes would locate the section corner where defendant claimed it to have been. There were no government marks upon the tree at the time of the trial, or for at least three years previously. The second witness tree called for was not found, and its disappearance, if it ever existed, was wholly unaccounted for. No one testified to having ever seen it, or any evidences of its existence. We do not think that the existing tree was conclusively proven to have been a witness tree; but, even if it had been, the courses and distances from it contained in the government field notes would not have been conclusive as to the location of the section corner, or necessarily entitled to any more weight than other courses and distances contained in the field notes.

A witness tree is not an established corner, but merely an object by means of which, in connection with the field notes, if correct, the corner may be found. The course and distance from a witness tree given in the field notes are just as liable to be erroneous as any others. In fact, it is the common experience of surveyors that the course, or, as the witnesses call it, the "angle" from the witness tree to the corner designated in the field notes is very often erroneous. When an established monument is wanting, so that resort must be had to the field notes in order to ascertain where it was located, and the courses and distances contained in the field notes are inconsistent, and cannot be reconciled, there is no universal rule which requires that certain ones should be preferred to the others. Such a case is very much like one where living witnesses contradict each other. We have to accept as true the testimony of those who, under all the circumstances, are most entitled to credit, and whose testimony is therefore more likely to be in accordance with the actual facts. Loring v. Norton, 8 Me. 61; Jones v. Burgett, 46 Tex. 284.

The evidence on behalf of the plaintiff consisted of the testimony of the county surveyor, who made a survey for the purpose of locating the disputed section line and corner in 1895,—46 years after the line was run by the government surveyors. The court accepted his survey as correct, and fixed and established the government line and corner accordingly. This witness had and used the government field notes in making his survey, but the defendant claims that he did not follow them. Finding neither monument nor evidence, as he considered, of witness trees, at or near the disputed section corner, he went east one mile, and found the section corner at the northeast corner of section 3. There is no conflict in the evidence as to the location of this corner. It is true that, it being in a lake, no monument had been erected at the actual corner, but the bearing trees and meander post were found giving the course and distance to the section corner. This was the first corner to be found east of the disputed corner. To the west the first corner to be found was the quarter post between section 32, township 36, and section 5, township 35 (which was a mile and a half west of the disputed corner), there being neither monument nor

witness trees to be found at the northwest corner of section 4. There is no conflict in the evidence as to the identification or location of this quarter post. The witness then ran a straight line between these two established corners,—that is, from the northeast corner of section 3 to the quarter post between sections 32 and 5,— the first mile of the distance being at a variation of 8.30 degrees and the last mile and a half at a variation of 8.37 degrees, and located the disputed corner at the point where this line intersected the north and south section line between sections 3 and 4 in township 35 and sections 33 and 34 in township 36. To verify his work, he then went to the northwest corner of section 34, township 36 (which was found), and ran south on the section line 80 chains, which was the distance called for by the government field notes between that corner and the disputed corner, and found that it carried him 4 rods, or 66 feet, south of where he had established the corner, and, of course, 189¾ feet further south of the point where defendant claimed the corner to be. The government field notes called for a distance of 78 chains between the disputed corner and the south section corner between sections 3 and 4, and a distance of 38 chains between the disputed corner and the quarter corner between the same sections. The witness then ran lines from each of these corners (both of which were found) north to the point where he had located the disputed corner, and found that the distances corresponded exactly with the field notes, being, respectively, 78 chains and 38 chains.

We are of opinion that this evidence amply justified the findings of the court, and we do not see wherein the rules of law for establishing lost lines or corners were materially violated or disregarded. It is evident that there must have been a mistake in chaining on the part of the surveyor who subdivided township 36, but, if defendant's claim is sustained, it would increase this mistake from 4 rods to nearly 16 rods in running one mile, which is hardly supposable. And, as suggested by the trial court, to locate the corner where defendant claims would involve three other mistakes: (1) A mistake of the surveyor who ran the township line in running it 189¾ feet too far north in a distance of one mile; (2) running it too far south in the next mile and a half a distance which, by a re-

markable coincidence, just corrected the mistake which he made in running the first mile; and (3) a mistake on the part of the surveyor who subdivided the south township of between 11 and 12 rods in one mile in chaining the north and south section line.

The objection made to the county surveyor's mode of re-establishing the lost corner is that in running the east and west line from the northeast corner of section 3 to the quarter post between sections 32 and 5 he entirely disregarded the variations given in the field notes by running a straight or true line, in the first mile of which the variation was 8.30 degrees and on the remaining mile and a half 8.37 degrees, whereas the variations given in the field notes were 11 degrees and 11.25 degrees, respectively. But it must be observed that this was a township line, which by law is required to be a true or absolutely straight line along the entire length or breadth of the township, and was neither a base nor a correction line. Moreover, the mere fact that the variation differs on different parts of a line does not prove that it is not a true or absolutely straight line, for it is a matter of common knowledge and experience that the variation of the needle from the true meridian changes materially within very short distances from local causes. The manual of surveying instructions for the survey of the public lands prepared under the instructions of the commissioner of the general land office in 1894 requires that

"The meridianal boundaries of townships will be run from south to north on true meridians, with permanent corners at lawful distances; the latitudinal boundaries will be run from east to west on random or trial lines, and corrected back on true lines."

And the circular of the general land office on the restoration of lost or obliterated corners (1896) provides that

"The two nearest known corners on the township line, the same not being a base or a correction line, will be corrected, as in case No. 1, by a right line, and the missing corner established by proportionate distance, as in that case."

If we understand the testimony correctly, the lost corner was re-established in strict conformity with this "rule," conforming as nearly as practicable to the original field notes. It must also be

recollected that the variation of the magnetic needle from the true meridian differs at different times, and that this difference is neither regular nor uniform. The amount to be allowed for this difference from the time of the original survey to the time of the resurvey was the subject of calculation, and was a question of fact to be determined by the court or jury from the evidence adduced before them on the trial. Wilson v. Inloes, 6 Gill, 121–163. The only evidence on this question was the testimony of the county surveyor himself to the effect that, as near as he could calculate, the annual difference was between 3.8 and 4 minutes, and that he figured it at 4 minutes. Taking into account the 46 years that had elapsed, the variations at which he ran the line were approximately the same as those given in the government field notes.

Assuming, without deciding, that instead of running a right or straight line between "the two nearest known corners" (which I personally think was the correct method) he should have run the line at the same variations given in the field notes, it is possible that his testimony shows that the disputed corner should have been located, not where defendant claims, but between one and two rods north of where the witness did locate it; still this error, if error it was, was without any substantial prejudice to the defendant, for the reason that the court awarded him a strip a rod and a half wide north of the government line as established, on the ground that he had acquired title to it by adverse possession.

Judgment affirmed.

An application for a reargument having been made, the following opinion was filed June 20, 1899.

PER CURIAM.

In their application for a reargument the appellants Danielson, two of the additional parties to the action brought in by the order of the court, who also tendered the issue of title by adverse possession, call attention to the fact that, after this defense had been stricken out of their answer, no such issue was, as to them, tried by consent, or determined by the court. Their lands are bounded on the north by the disputed town line, and are, respectively, situated east and west of the lands of the original plaintiff and de-

fendant. The issue of adverse possession tendered by them was not with the plaintiff, but with the parties who owned land abutting them on the north. As these latter parties were not made parties to the appeal, the question of the propriety of the action of the trial court in striking out the Danielsons' defense of adverse possession is not before this court.

Application denied.