## DAVID M. NEWBOLD *vs.* LEVI Z. CONDON.

*Mistake in Description of Land—Reversing Calls—Specific Performance.*

More than fifty years ago a deed conveying a tract of land contained an erroneous description of one of the boundary lines but made a reference to a previous correct description and stated that it was the same lot which had been thereby granted. Subsequent conveyances, including the one to the plaintiff in this case, contained the same misdescription but with a reference to the previous conveyance. The lot had been enclosed in conformity with the correct description and continuously occupied by the plaintiff and his predecessors in title down to the present time. In order to amend the misdescription it would only be necessary to reverse the direction of one of the lines and increase its length from 10½ perches to 19½ perches. *Held,* that the plaintiff's title to the lot as correctly described is valid and he is entitled to a decree for the specific performance of defendant's contract to buy the same.

In order to correct a mistake in the description of land in a conveyance and cause it to embrace the number of acres it purports to convey, the calls may be reversed and the lines run in the opposite direction.

*Decided June 15th, 1906.*

Appeal from the Circuit Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*Madison Marine*, for the appellant.

*David M. Newbold, Jr.* (with whom was *John P. Paca* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City requiring the appellant to perform a written contract for the purchase by him from the appellee of a lot of ground lying in the recently annexed portion of the city. The contract contains an exact description of the lot and calls for its conveyance to the appellant by a good and merchantable fee simple title.

The bill was filed by the appellee, Levi Z. Condon, to compel the specific performance by the appellant, David Newbold, of his contract to purchase the land. Newbold in his answer admitted the making of the contract but averred, as an excuse for his non-performance of it that Condon could not give him a good title to the land. The record discloses the fact that Newbold asserted that Condon's title was defective because of an alleged failure of the description contained in the deed, under which the latter claimed, to embrace all of the land described in the contract now sought to be enforced. The Court below being of opinion after hearing the case that Condon could give a good title to the land passed the decree appealed from.

The lot of land is described in the contract of sale as fol-

lows: All that lot or parcel of land or ground situate and lying in Baltimore City and State of Maryland aforesaid, being part of a lot heretofore held by the Baltimore Company which by a division of the lands of the said company under a decree of the High Court of Chancery dated the twenty-third day of April, eighteen hundred and ten accrued to Charles Carroll, of Carrollton, and is distinguished on a plat of the said division by lot number one hundred and thirty-five, and described by the metes and bounds, courses and distances following, viz: Beginning for the same at a stone the beginning of the whole lot and running and bounding on the Reisterstown turnpike road north twenty-nine degrees west forty perches and two-tenths of a perch to a stone sixteen and a half feet from the second boundary of the whole lot; thence running and bounding on a road sixteen and a-half feet wide laid out by Susannah Vineyard, and parallell with the outlines of the whole lot, south sixty degrees west twenty perches and three-fourths of a perch south eighty-nine degrees and three-fourths of a degree west nineteen perches and one-half of a perch; thence running across the whole lot south thirty-five perches until it intersects the last line of the whole lot at the distance of fifty-seven perches south eighty degrees west from the beginning stone aforesaid, and thence to the beginning, containing ten acres more or less.

In the deed by which the appellee acquired title to the land from Albert N. Horner it is thus described. "Beginning for the same at a stone the beginning of the whole lot and running and bounding on the Reisterstown turnpike road north twenty-nine degrees west forty and two-tenths perches to a stone sixteen feet and six inches from the second boundary; thence running and bounding on a road sixteen feet and six inches wide as laid out by Thomas Vineyard and parallel with the outlines of the whole lot, south sixty degrees west twenty and three-fourth perches, south eighty-nine and three-fourths degrees west ten and a half perches; thence running across the whole lot south thirty-five perches until it intersects the last line of the whole lot at the dis-

tance of fifty-seven perches south eighty degrees from the beginning stone aforesaid and thence to the place of beginning." We here insert a copy of a plat of the lot, recently made from an actual survey by the City Surveyor, which shows the location of the boundaries called for by the several descriptions.

It appears from this plat and the foregoing descriptions that the third and fourth lines of the lot which the appellant agreed to purchase from Condon are misdescribed in the deed by which the latter acquired his title, in that the third line runs south eighty-nine and a quarter degrees west along the Vineyard road *ten* and a-half perches (to F on the plat) instead of *nineteen* and a-half perches (to D on the plat), and the fourth line is said run across the whole lot from the end of the third line (F on the plat instead of D which is the end of the true third line) thirty-five perches until it intersects the last line of the whole lot at the distance of fifty-seven perches

south eighty degrees (instead of south 80° west) from the beginning. If the fourth line of the deed were run south from F on the plat it would not intersect the last line of the whole lot at or near the distance of fifty-seven perches from the beginning as it would do if it were run south thirty-five perches from the true end of the third line at D. If the fourth line were run in a southwesterly direction from F to E, which is the point on the last line of the whole lot fifty-seven perches south eighty degrees west from the beginning, about one acre of the land described in the contract would lie outside of the boundaries of the lot.

As the fourth line of the description in the Condon deed cannot be accurately located there is a manifest error in that description and the Court, under the established principles of location as declared in *Kelso* v. *Stigar*, 75 Md. 392, and also in the recent case of *Md. Construction Co.* v. *Kuper*, 90 Md. 547, "will inquire into the probabilities of mistake as to the objects or courses called for and look to the consequences which would result from rejecting one or the other." Now if, for the purpose of making such inquiry, we turn to the abstract of title and evidence, incorporated into the present case by the agreed statement of facts appearing in the record, the following situation is disclosed in reference to the lot of land in controversy.

In 1848 a bill was filed in the High Court of Chancery of Maryland by William Beaver *et al.* for the sale, for the purposes of partition between tenants in common, of a lot of ground, said to contain ten acres, more or less, and to be lot No. 135 of the land of the Baltimore Company, which was described by metes and bounds exactly as the lot is described in the contract of sale now before us. A sale of the lot thus described was in due course decreed, and in 1849 it was made and finally ratified to Robert H. Hammett. In 1850 the trustees who had been appointed to make the sale executed a deed of the lot to Hammett reciting the decree and the sale to him of the lot mentioned in the proceedings but describing the land by the erroneous description already referred to.

That description continued to be used in the subsequent deeds in the chain of title down to and including the one from Horner' to Condon, but each one of these deeds referred to the next previous one and said that the lot was the same which had been thereby granted, thus identifying it by a chain of references with the lot which was correctly described in 1848.

It was proven by the uncontradicted testimony of three witnesses, all of whom had been familiar with the property since 1848 and one of whom had lived on it for over thirty years, that it had been continuously enclosed and occupied by Robert H. Hammett and his successors in title, from the time of his purchase of it in 1849 at the partition sale down to the present time, according to the boundaries employed in the present contract of sale. In fact the evidence shows that this possession has always extended on the west to a fence, still in existence, which stands a short distance outside of the boundary line. These facts would of themselves go far toward establishing the appellee's title to the entire lot as described in the contract but his case does not depend upon them alone.

It is well settled that, in order to reconcile or make clear the calls of a survey or to more nearly harmonize the quantity of land with that called for in the grant, the calls may be reversed and the lines run in the opposite direction. *Ayers* v. *Watson*, 137 U. S. 584; *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417; *Proprietary* v. *Jennings*, 1 H. & McH. 139; *Hammond* v. *Norris*, 2 H. & J. 148; *Wilson* v. *Inloes*, 6 Gill, 121; *A. & E. Encyl. of Law*, vol. 4, p. 789, and cases there cited. The application of that .rule of location to the facts of the present case will remove the entire difficulty. Reversing the description of the Condon deed the first and second lines would run south 80 degrees west 57 perches (to E on the plat) then north thirty-five perches to the Vineyard road (at D on the plat;) following that road then to the Reisterstown road as both of the descriptions do, we would of necessity have the two courses of north 89 degrees east 19½ perches (to C on the plat) and north 59 degrees eleven minutes east 20¼ perches (to B on the plat) and then along the Reisterstown road

to the beginning.    This would reconcile the two descriptions and enclose the requisite ten acres of land which the lot is said in the paper title to contain.    In order to accomplish this result with the erroneous description contained in the Condon deed it is only necessary to increase the length of the third line from 10½ perches to 19½ perches.    In *Kelso* v. *Stugar*, 75 Md. 393, and *Wilson* v. *Inloes*, 6 Gill, 121, our predecessors said that "where the assumption of mistake in a single description harmonizes all the rest of the grant the Court will make such assumption."    In that case the whole apparent difficulty was said by the Court to arise from the direction given to the first line of the description, which by the deed ran north when it should have run south.    In the present case the whole apparent difficulty arises from the length of the third line of the description in the Condon deed, it being there stated to be 10½ perches instead of 19½ perches.    We have also in the present case the additional and important fact that the assumption that the length given to the third line in the Condon deed was a mistake will harmonize the amount of land enclosed within the corrected description with the statements of the paper title.

We are therefore of the opinion that the appellee Condon took title under the deed to him from Albert N. Horner to the entire ten acres of land described in the contract of sale and that no reason appears in this record why he cannot convey it by a good title to the appellant in fulfillment of the contract and that he was therefore entitled to the decree for the specific performance from which the present appeal was taken, and we will affirm that decree.

*Decree affirmed with costs.*