### F. A. SOMMER and Others v. F. W. MEYER.[1]

April 24, 1914.

Nos. 18,280—(30).

**Lost section corner — evidence.**

1. A section corner is where the government surveyors placed it. Where a section corner post had disappeared, the evidence of witness bearing trees and the surveyor's field notes will usually prevail. If the calls of the field notes are erroneous, their use or rejection becomes a practical question. There is no universal rule applicable to such a case. The court must make its decision, as in any other case, by considering all the evidence that will aid it in arriving at the facts, such as the testimony of eye witnesses as to the location of lost monuments, the testimony of surveyors based on surveys from other established locations, as well as the calls of witness trees and field notes. The direction of lines may be reversed if by so doing all the

[1] Reported in 146 N. W. 1106.

known calls of the survey are harmonized, otherwise the calls are to be taken as they are.

**Finding sustained by evidence.**

2. The testimony of the surveyor whose location the court adopted, is discredited in some particulars, but it accords with old surveys, with the testimony of eye witnesses as to the location of lost monuments and with lines long acquiesced in, and it properly apportions the distance between established monuments. The testimony taken altogether sustains the finding of the trial court.

Action in the district court for Goodhue county to determine a boundary line. The case was tried before Hodgson, J., who made findings and ordered judgment in favor of plaintiffs. From an order denying his motion for judgment in his favor notwithstanding the decision or for a new trial, defendant appealed. Affirmed.

*Albert Schaller* and *C. P. Diepenbrock,* for appellant.

*Mohn & Mohn,* for respondents.

HALLAM, J.

This action is brought under G. S. 1913, § 8095, to determine a disputed boundary. Plaintiffs own the north half of the northwest quarter of section 10, and defendant the northeast quarter of section 9. The dispute is as to the location of the section line between sections 9 and 10. The original post set by the government surveyor at the north section corner, between sections 9 and 10, is lost. In 1907 the county surveyor of Goodhue county located this corner and, with it, the section line. The trial court found this location to be correct.

The contention is, in substance, that the finding is contrary to the evidence. We think there is evidence to sustain it. The original government survey was made in 1857. In 1862 a surveyor named Hart located part of this section line, and a highway was established thereon. In 1865 Hart again located this section line and the now disputed corner for one Busch, plaintiffs' predecessor in title, and Busch built a fence on the line. Two witnesses testified that they then saw the original section corner post in place. The county surveyor's corner and line agree substantially with those located by Hart and with the location of the original corner post as testified to by

these eye witnesses. Defendant was present when the government survey was made and saw the corner located. He acquiesced in the Hart survey and the Busch fence line for many years, and there · is evidence that in 1907 he admitted that the corner as located by the county surveyor was about correct.

Defendant employed two surveyors, Vickery and Peterson. They undertook to locate the disputed corner by two government witness bearing trees, which still remain. But the "calls" of the original field notes, to which resort must be had to locate the corner, are admittedly erroneous. The courses and distances called for, and which should converge at a common point, the section corner, do not meet at all. Defendant's surveyors insist that these calls should be transposed and otherwise changed. By changing the field notes applicable to one tree from "N.220° W." to "N.18° .06′ E." and the field notes applicable to the other from "N.42° E." to "N.51° W." the lines produced to meet at a common point, which these surveyors insist must be taken as the section corner. The court was not bound to adopt any such conclusion. A section corner is where the government surveyors placed it. Where the corner monument is lost, and the markings on witness bearing trees and the calls of the original field notes are clear and consistent, these will usually prevail. Stadin v. Helin, 76 Minn. 496, 79 N. W. 537, 602; Goroski v. Tawney, 121 Minn. 189, 141 N. W. 102; G. S. 1913, § 984. Even then they are not conclusive, and other evidence as to the actual location of the original corner may be so clear and convincing that it will prevail over them. Beltz v. Mathiowitz, 72 Minn. 443, 75 N. W. 699. If the field notes are conflicting and contradictory, their use or rejection becomes a practical question. There is no universal rule applicable to such cases. Stadin v. Helin, 76 Minn. 496, 79 N. W. 537, 602. The court must make its decision, as in any other case, by considering all the evidence that will aid it in arriving at the facts, such as the testimony of eye witnesses as to the location of lost monuments, the testimony of surveyors based on surveys from other established locations, as well as the calls of witness trees and field notes. The direction of lines called for by the field notes may be reversed or varied, if by so doing all the known calls of the survey are harmonized, other-

wise the calls are to be taken as they are written. Ayers v. Watson, 137 U. S. 584, 604, 11 Sup. Ct. 201, 34 L. ed. 803; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 432, 12 Sup. Ct. 239, 35 L. ed. 1063; W. T. Carter & Bro. v. Kirby Lumber Co. 152 Fed. 622, 82 C. C. A. 14; Newbold v. Condon, 104 Md. 101, 64 Atl. 356. When they must be warped and changed, as in this case, in order to bring any result at all, most of their value as evidence is gone. These rules are in substantial accord with the rules of the General Land Office applicable to such cases. See Rule 27, Gen. Land Office Revision of June 1, 1909, Restoration of Lost or Obliterated Corners, etc.

The witness trees and field notes in this case do not conclusively locate the disputed corner.

2. Defendant's surveyors verified their location of this line by measurement from other established monuments. The county surveyor located his line in a similar manner. They arrived at different results. Defendant contends that the county surveyor's measurements were palpably wrong in that he, in fact, in reducing chains and links to feet and inches, used a 10-inch foot. It does appear that in the notations, on his maps, of measurements from witness bearing trees, he made precisely this mistake in two instances, once at the section line a mile to the south, and again at the quarter corner a mile to the west, of the disputed corner. We think it does not conclusively appear that he made this mistake in his measurements on the ground. His location of the south section corner in fact agrees with that of defendant's surveyors. His location of the quarter corner differs from that of defendant's surveyors, but the discrepancy is not even approximately the difference that would result from the use of a 10-inch foot. The same may be said of all other discrepancies in their surveys. We are not obliged to determine the extent to which the county surveyor's errors would impeach his whole survey if his testimony stood alone, for plaintiffs do not depend wholly upon the testimony of the county surveyor. His location of this corner is sustained by the Hart survey, by the oral testimony of eye witnesses as to the actual location of the original corner post, and by the acquiescence of all parties for many years. It also has the merit of maintaining a proper proportion of the distance between established monuments,

that is, it makes the north line of the northeast quarter of section 9 substantially half as long as the north line of section 10. This result is always desirable and is sometimes commanded. See rule 56, Gen. Land Office Revision of June 1, 1909, Restoration of Lost or Obliterated Corners, etc. Defendant's surveys have none of these merits. They repudiate the line and the corner established in the Hart survey. They change a line long acquiesced in by these parties. They arrive at an unequal apportionment of the distance between established monuments, and give to the north line of section 10, 5262 feet, and the north line of the northeast quarter of section 9, 2665.6 feet.

The evidence, taken as a whole, sustains the location adopted by the trial court.

Order affirmed.