JOHN HANSON and Others v. ALBERT E. RICE.[1]

January 16, 1903.

Nos. 13,148—(192).

Meander Line—Boundary.

Where the meander line of an inland, meandered, navigable lake is not a boundary line of the fractional lots or tracts of land abutting thereon, the title of contiguous owners extends to all land between such line and the shore of the lake, precisely as though it were the result of accretions or relictions; and the boundaries of adjoining tracts, as to land beyond the meander line, are fixed by extending their side lines on a deflected course from their intersection with the meander line toward a point in the center of the lake.

Field Notes—Plat.

Where there is a variance between the meander line established by the surveyors, as shown by the official plat of the survey and the field notes, the former controls.

[1] Reported in 92 N. W. 982.

88 M.—18

Action in the district court for Kandiyohi county to determine the boundary line between the adjoining lands of plaintiffs and defendants. The plan printed on pages 276 and 277, defendants' "Exhibit 1," illustrates the point in controversy.

The case was tried before Powers, J., who found, as conclusion of law, that the boundary line between lot 7 and lots 2 and 4 was the quarter section line running north and south through section four. From an order denying a new trial, defendants, owners of lots 2 and 4, appealed. Reversed.

*Lyndon A. Smith*, for appellants.

The grants of the government for lands bounded by streams and other waters, without any reservation or restriction of terms, are to be construed, as to their effect, according to the law of the state in which the land lies. Hardin v. Jordan, 140 U. S. 371; Lamprey v. State, 52 Minn. 181. When land is bounded in the conveyance by a nonnavigable lake or river, it is presumed the parties intend the center, and not the shore line to be the boundary. Lamprey v. Mead, 54 Minn. 290, 299. The same principle applies when there is land between the meander line and the lake shore. Schlosser v. Cruickshank, 96 Iowa, 418; Mitchell v. Smale, 140 U. S. 406. Where it appears that the government intended to sell all the land to the river or body of water, the riparian owner is entitled to all the land adjacent to his grant to the water's edge. Schlosser v. Cruickshank, supra; Security Land & Exp. Co. v. Burns, 87 Minn. 97. The owners of land bordering on shores of a meandered nonnavigable or dried-up lake own the bed of the lake in severalty. Their title extends to the center of the lake. The boundary lines of each abutting tract being fixed by extending from the meander line on each side of the tract lines converging to a point in the center of the lake. Shell v. Matteson, 81 Minn. 38; St. Paul, S. & T. F. R. Co. v. First Division St. P. & Pac. R. Co., 26 Minn. 31, 34. The parties to this action are the privies in estate of the United States Government and are therefore estopped to question the plat, and as between themselves must consent to the division of that which by the plat appears to be lake bed according to the rules laid down for the division of lake beds among shore owners. 11 Am. & Eng. Enc. (2d Ed.) 399; Bige-

low, Estop. (5th Ed.) 397; Schurmeier v. St. Paul & Pac. R. Co., 10 Minn. 59 (82); Bates v. Illinois Cent. R. Co., 1 Black, 204; Sizor v. City, 151 Ind. 626. The two leading rules for determining side lines on foreshore of navigable lakes are stated in the prevailing and dissenting opinions in case of Northern v. Bigelow, 84 Wis. 165.

*A. J. Volstead*, for respondents, cited: Menasha v. Lawson, 70 Wis. 600; Lally v. Rossman, 82 Wis. 147; Olson v. Thorndike, 76 Minn. 399; Lamprey v. Mead, 54 Minn. 290; Whitney v. Detroit, 78 Wis. 240.

BROWN, J.

This action was brought under the provisions of Laws 1893, c. 68, to determine the boundary line between tracts of land owned by the respective parties. Plaintiffs had judgment in the court below, and defendants appealed from an order denying their motion for a new trial.

The facts are as follows: Plaintiffs own fractional lot 7 in section 4 of township 121, range 35, Kandiyohi county, and defendants own fractional lots 2 and 4 in the same section. The boundary line sought to be established is that extending north and south between lot 7 and lots 2 and 4. Lot 7 lies immediately south of Swan Lake, and lots 2 and 4 to the west and southwest. In the survey of this land a meander line was run, presumably with reference to the lake, but at a considerable distance from its actual shore,—some thirty rods or more at one point,—and the lots in question abut thereon. Between the meander line and the shore of the lake there evidently was at the time of the survey, and still is, quite a body of high, dry land, on which is a heavy growth of timber. To the southwest of the lake, and between it and the meander line, is a large slough, and no doubt the meander line was run with reference to this slough as a part of the lake. The line between lots 2 and 4 running east and west would, if extended beyond the meander line, reach the lake shore, though the south line of lot 4, if so extended in a direct course, would not touch the lake at all. The lines of lot 7 running north and south would, if so extended, also reach the lake.

Plat of Section 4,

Town 21 North, Range 35 West.

The trial court held that the owners of lots 2 and 4 were entitled to go beyond the meander line in the direction of the lake to the quarter line of the section, and no farther, thus taking enough land beyond the meander line to fill out their respective government subdivisions. The quarter line extending through the center of the section north and south was accordingly held the boundary line between those lots and lot 7, the former being on the west and the latter and the lake on the east of that line. By this, lot 4 and the greater part of lot 2 are entirely cut off from access to the lake. The position of appellants is that the land lying between the meander line and the lake belongs to and is a part of the lots abutting thereon; that, within the rule applicable to the division of such lands, as established by the decisions of this court, the boundaries of lots abutting thereon are fixed by extending the side lines of each abutting tract from their intersection with the meander line to a point in the center of the lake.

We are of the opinion that the learned trial court adopted an erroneous view of the law applicable to cases of this kind. It was held in Schurmeier v. St. Paul & Pac. R. Co., 10 Minn. 59 (82), that the owners of lands abutting upon a river or stream are the owners of all land between the meander line and the bed of the stream; that the lines of their tracts extend in a direct course to the thread of the stream. And in respect to lands bordering on navigable rivers this has always been the law in this state. The rule is not changed because of the fact that between the meander line and the river proper there may be high, dry land, which never formed part of the river bed, nor was the result of accretion or the recession of its waters.

Such was the case of Olson v. Thorndike, 76 Minn. 399, 79 N. W. 399. In that case it appeared that between the meander line and the bed of the river there was at the time of the survey high dry land to the width of twenty-six rods, on which was a heavy growth of timber. The court held that the land between the meander line and the river belonged to the owners of the abutting property, notwithstanding the fact that such land was not the result of accretions or occasioned by the recession of the waters of the river.

The same rule has been applied to nonnavigable and dry lakes, except that the lines of the abutting property deflect at their intersection with the meander line from a direct course to a point in the center of the lake. The law in respect to the proper division of nonnavigable lakes was very fully and clearly discussed in the case of Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, and is in accord with the decisions of the supreme court of the United States. Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838.

It may be conceded that in instances it may be difficult to make a proper division of such lake beds, owing to their form and shape and the difficulty of locating the center; but such is the law of this state, as established in the Lamprey case, as the most just and equitable method of dividing lands of the kind, and it must be followed and applied. The same rule was applied in Everson v. City of Waseca, 44 Minn. 247, 46 N. W. 405.

In 1897 the legislature of the state sought to relieve the difficulty in dividing dry lake beds between the abutting owners by enacting that the owners of adjoining property were owners in common of the lake bed, and providing for a partition and sale of the same on lines specified in the act. But this court held, following the Lamprey case, that the owners of lands bordering on the shore of a meandered, nonnavigable, or dry lake own the lake bed in severalty; that their title extends to the center of the lake, the boundary lines of each abutting tract being fixed by extending from the meander line lines converging to a point in the center of the lake; and also held that the act was unconstitutional, as impairing vested rights. Shell v. Matteson, 81 Minn. 38, 83 N. W. 491.

The rule must apply in all cases where there is land between the government meander line and the shore of a lake with reference to which the meander line was run by the government surveyors, whether the lake meandered be navigable or nonnavigable. It was said in the Lamprey case that, where the lake is navigable, in point of fact, its waters and bed belong to the state in its sovereign capacity, and that the riparian patentee takes the fee only to the water's edge, "but with all the rights incident to riparian ownership on navigable waters, including the right to accre-

tions or relictions formed or produced in front of his land by the action or recession of the water."

The rights of riparian owners extend to land formed by gradual and imperceptible accretion from the waters and land gained by reliction or the gradual and imperceptible recession of the water, so that, where the waters of a meandered lake, whether navigable or nonnavigable, gradually recede, leaving exposed between the meander line and the water's edge dry land, the same belongs to the abutting owners. We must take judicial notice of the fact that many of the lakes of this state are thus gradually receding and drying up, and the abutting owners must be held to own to the center of such lakes when they finally become entirely dry; and during this gradual process the side lines of abutting property must converge to that central point. If they be run in a direct course to the lake shore, as the waters recede they will ultimately overlap, and a conflict will arise between owners of contiguous property as to their true boundaries.

We have been cited to some cases from the supreme court of the state of Wisconsin, where a different rule has apparently been established; but they are not in accord with the decisions of this court, which have, with us, become rules of property, and we do not follow them. The position of plaintiffs in the case at bar can be sustained only by overruling the Lamprey and other cases.

Again, the meander line run with reference to a lake or river is either a boundary line of property abutting thereon or it is not. If a boundary line, it determines the extent of the land owned by the adjoining proprietors, and any land lying between it and the meandered body of water belongs to the government, and not to the adjoining proprietors. Such was the holding in the case of Security Land Exp. Co. v. Burns, 87 Minn. 97, 91 N. W. 304, to which reference is made for a very clear and full exposition of the law on the subject. But, as a rule, a meander line is not a boundary line, and land lying between it and the body of water meandered belongs to abutting owners precisely the same as accretions or relictions. Gould, Waters, § 155, and cases cited.

In the case at bar neither party claimed the meander line in question to be a boundary line. Both proceeded on the theory

that it was not; and properly so, we think from the record, for there does not appear to have been so gross a mistake in the survey at this point, or in the location of the meander line in question, as to warrant its being characterized as a fraud. It not being a boundary line, the court should have applied the rules of law we have pointed out, and extended the lines of the abutting lots to a point in the center of the lake.

It appears from the record that there is a variance between the meander line as shown by the plat and as shown by the field notes. In view of a new trial it is proper to say that the meander line as shown by the plat controls, and the court below will be guided accordingly. Beaty. v. Robertson, 130 Ind. 589, 30 N. E. 706.

The order appealed from is reversed, and a new trial granted.