## DAVID BURTON v. TONNES ISAACSON and Others.[1]

July 18, 1913.

Nos. 18,182, 18,183—(225, 226).

**Assignments of error.**

1. Assignments of error *held* sufficient to challenge the conclusions of law and the judgment appealed from, though not the findings of fact.

[1] Reported in 142 N. W. 925.

**Federal statute not applicable.**

2. R. S. (U. S.) § 2396, *held* inapplicable to a controversy relating to the riparian rights of owners of fractional lots in a fractional township abutting upon a lake in this state.

**Judgment incorrect.**

3. Judgment determining the rights of such owners in and upon lands lying between the meandered line and the water, *held* erroneous.

Action in the district court for Traverse county to enjoin defendants from trespassing upon defendant's property and to recover $200 damages. The case was tried before Flaherty, J., who made findings and ordered judgment that plaintiff was entitled to a permanent injunction against defendants Isaacson. From a judgment entered pursuant to the order for judgment, the original defendants Isaacson appealed and John L. Larson and 13 other persons brought in as defendants, as stated in the opinion, appealed. Reversed.

*Edward Rustad* and *John F. Fitzpatrick,* for appellants.

*F. W. Murphy,* for respondent.

PHILIP E. BROWN, J.

Action to enjoin defendants Isaacson from trespassing upon certain lands beyond the meander line in the bed of Lake Traverse, and for damages.

The government survey of the lake indicates but one body of water some 25 miles in length, and Congress, in authorizing our state government, made its center a part of our western boundary. See R. L. 1905, p. 1198, § 1. On the Minnesota side the lake is bordered by fractional township 127, range 47, and of the lands abutting thereon plaintiff owns lots 1 and 2 in section 31, containing, according to the government map, 13.75 and 56.05 acres respectively, while defendant Tonnes Isaacson owns lot 1 in section 32, shown on the same map as containing 35.50 acres. The souther· ly portion of the latter tract lies immediately east of plaintiff's lot 1, and the same defendant also owns lots 3 and 4 in section 29, situated northeasterly from his lot 1. The following plat shows the location of the lands in the southwesterly portion of the township

with reference to the lake in accordance with the government survey:

The controversy between plaintiff and defendant Tonnes Isaacson concerns the title to certain lands lying westerly and northwesterly from the northerly point of the north and south section line between

sections 31 and 32. At the time of the trial, and for some years prior thereto, a considerable portion of the water had receded near the southerly portion of the township mentioned and northerly from plaintiff's lot 1. These waters are shown by the government plat as a portion of Lake Traverse, but the land there is free from water to such an extent as now to make two separate lakes, connected, however, by the Bois de Sioux river, which is from 2 to 4 rods wide. The north body, also called Mud lake, is some 15 miles long, and narrows and widens with bays from less than one to 1½ miles, having the Bois de Sioux as its outlet at the north end. This river is also a part of the state boundary, and flows north into the Red river. The court found Mud lake to be a permanent body of water, valuable for hunting, fishing, ice, boating, pleasure resort, and public water supply, having at the time of the trial of the action from one to seven feet of water, and an average depth during the preceding 30 years of from one to ten feet, the main and deepest part lying north from plaintiff's lot 1. The court further found that the Bois de Sioux at the south of Mud lake has no channel through any part of the lake and exists only at times of high water.

This action seems to have been commenced in June, 1911, and the trial was had in May, 1912. On October 17, 1911, on motion of defendant Tonnes Isaacson, all persons owning lands in the township bordering on the east side of the lake, other than the parties, were brought in as additional parties defendant. The latter all answered, claiming that the side lines of their respective lands extended west to the Bois de Sioux river, and that they owned all the land west of their lots to the river in fee simple, it being furthermore stipulated on the trial "that the lines dividing the properties of all the parties, except the line between defendant Isaacson and the plaintiff Burton, shall be continuations of the east and west lines between such defendants, respectively, running west to the state line of Minnesota." The original defendants, other than Tonnes, are his sons, against whom a recovery cannot be had, unless such can be sustained against Tonnes.

The court, in the findings, undertook to determine the title and right of possession of plaintiff and Tonnes Isaacson to the land ly-

ing west and north of plaintiff's lots 1 and 2, and between them and the lake and river. On the other hand, it was found that this was not an action to divide the bed of the lake between plaintiff and any of the defendants, but, as litigated, became one to determine the location of the line between that portion of the meandered land lying north and west of plaintiff's lots 1 and 2, and between them and the lake and river and the land belonging to defendant Tonnes. Pursuant to this theory, the court found that the establishment of the boundary line between the original parties would and could not, in any manner, affect in any way the rights of any of the additional defendants to any of their lands or any boundary lines between their, or any of their, lands, or between plaintiff's lands and theirs, except as to defendant Tonnes; and hence that the claims of the additional defendants were unsupported. The court found, however, that the westerly boundary line of the lands of all the additional defendants, except defendant Boley, was the main body of Mud lake, which was found to lie immediately north of the north line of plaintiff's lot 1, and slightly northwest from defendant's lot 4. The court concluded, as a matter of law, with reference to the additional defendants, as follows: "There being no proof to establish any of the allegations of the answers of" such defendants "their respective claims as shown by their answers are hereby dismissed."

In addition to other defenses interposed by Tonnes, was that of adverse possession. The court determined all the issues against the original defendants, held that no importance should be attached to the river, and established the boundary and dividing line between the lands lying north, northwest, and west of the meander line, and between the lots of the parties and the lake and river, as beginning at the northeast corner of plaintiff's lot 1, and extending northwesterly, as shown by the line on the accompanying plat, to the water; such line to be further extended in the same direction to the intersection of the water as the latter recedes, holding the fee simple title to all the lands west of this boundary line to be in plaintiff, and that to the lands east thereof and in front of defendant's lots 1, 3 and 4, to be in him, and awarding an injunction and a money recovery against defendants Isaacson. Judgment was entered against

all the defendants and in favor of plaintiff in accordance with the findings, and against defendants Isaacson for injunction and damages for trespassing on the land west of the diagonal line mentioned. A case was settled, but no motion for a new trial or for amended or additional findings was made. The original and additional defendants appealed separately from the judgment.

1. Plaintiff moves the dismissal of the appeal because of the insufficiency of the assignments of error. It is true that these practically leave the findings of fact unchallenged, but nevertheless they are sufficient to attack the conclusions of law and judgment.

2. Defendants contend that the act of Congress, R. S. (U. S.) § 2396, was binding upon the court. It reads:

"The boundary lines, actually run and marked in the surveys returned by the surveyor general, shall be established as the proper boundary lines of the sections, or subdivisions, for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof. And the boundary lines which have not been actually run and marked shall be ascertained, by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the watercourse, Indian boundary, or other external boundary of such fractional township."

This statute has no application to the present case. No claim of a fraudulent survey is involved, and the parties are all relying upon the original survey as the basis of their riparian rights. Upon filing of the plats, complete jurisdiction over the lands in dispute passed under the control of the state, and the Federal act has since been of no importance. The rights of the parties are purely riparian, and must be determined according to the law of this state. Hanson v. Rice, 88 Minn. 273, 92 N. W. 982; Lamprey v. State, 52 Minn. 181, 53 N. W. 1139.

3. Taking the findings of fact, as distinguished from the conclusions of law contained therein, as verity, which must be done,

the question is: Can the determination of the action arrived at by the trial court be sustained? We are convinced it cannot, and what is further said herein is in view of possible future rather than to past proceedings.

The distinction attempted to be drawn by plaintiff on the theory that the purpose of the litigation is not to divide the bed of the lake, but to fix the rights of the parties in the lands lying between the meandered line and the present water line of the upper lake, is without force. The effect is the important matter, without regard to the purpose. This is apparent, for the judgment deprived Isaacson of the right to use lands lying due west of his lot 1, in the lake bed, which he has, concededly, occupied for many years, adjudges them to belong to plaintiff in fee, and ignores the riparian rights of defendant Boley, the owner of lots 3 and 4 in section 31, shown on the plat. Furthermore, who can tell to what point the diagonal line drawn by the court will ultimately extend or whose rights will be affected thereby? Under the judgment it could, under certain conditions, reach the parallel of the north line of Isaacson's lot 3, or even further north.

The law pertaining to the rights of riparian owners has been so thoroughly considered by this court as to render repetition unnecessary. See Schurmeier v. St. Paul & Pac. R. Co. 10 Minn. 59 (82); Lamprey v. State, supra; Olson v. Thorndike, 76 Minn. 399, 79 N. W. 399; Hanson v. Rice, supra; Sherwin v. Bitzer, 97 Minn. 252, 106 N. W. 1046; Shell v. Matteson, 81 Minn. 38, 83 N. W. 491; Scheifert v. Briegel, 90 Minn. 125, 96 N. W. 44; a comprehensive review of the subject being found in the case last cited.

Here the court is called upon to deal with that portion of a long and comparatively narrow lake, indented with bays and projecting shore lands, which is within our borders. We are not advised as to conditions at its north end, but, this notwithstanding, manifestly the rule adopted by this court in the division of lakes somewhat circular in form is inapplicable. See Scheifert v. Briegel, 90 Minn. 125, 129, 96 N. W. 44. We doubt if the trial court fully appreciated the effect of the evidence as to there being sufficient water in the river to supply plaintiff's needs, and also furnish him access to

the main body of the lake. If such be the fact, and no unusual complications exist at the north end of the lake, an equitable solution of the controversy could well be reached, by extending the lines of the lots of all of the parties to this action in a direct course westerly from the established corners; which, furthermore, would be in accord with the rule in this state applicable to rivers. See Schurmeier v. St. Paul & Pac. R. Co. supra; Hanson v. Rice, 88 Minn. 273, 278, 92 N. W. 982. Moreover, if the cause is tried again, the testimony relating to Tonnes Isaacson's claim of title, by adverse possession, to the fenced lands should receive careful consideration. And also if, upon any further proceedings, the action be treated as one to determine the ultimate rights of the riparian owners in the bed of the lake, all persons having riparian rights in this state north of township 127 should be made parties defendant in addition to the parties already brought in.

Judgment reversed as to all the defendants.

BUNN, J., took no part.