JAMES LAWLER v. COUNTIES OF RICE AND GOODHUE AND ANOTHER.[1]

June 29, 1920.

No. 21,986.

**Appealable order — denial of new trial.**

1. Dispute by landowners as to location of boundary between two towns. The trial court made findings and granted a new trial as to one specific issue and not as to the others. Defendants appealed from the order denying their motion for a new trial. Motion for dismissal of appeal on ground that the appeal is from a nonappealable order. *Held*: The order must be held appealable, unless the sole issue on which the new trial is to be had determines the action for or against the defendants, regardless of whether the other findings of fact stand. Evidently defendants appeal because a new trial was denied as to the other issues. Without having the record in the appeal, the court denied the motion. [Reporter.]

November 26, 1920.

**Boundary—actual location of quarter-section post conclusive.**

2. The corners and boundary lines established by the government survey of the public lands are where they were actually marked on the

[1]Reported in 178 N. W. 317, 180 N. W. 37.

ground by the government surveyors, and the point where a section post or quarter-section post was placed on the ground, if satisfactorily established, is controlling and conclusive as to the location of the corners marked by it, although such location may not accord with the courses and distances shown on the plat and field notes.

**Same — finding sustained by evidence.**

3. The evidence sustains the finding of the trial court that the quarter-section post in controversy was placed by the government surveyors at the point claimed by plaintiff.

Action in the district court for Rice county to restrain defendants from entering upon certain land or removing a certain fence. The case was tried before Childress, J., who made findings and ordered the temporary injunction obtained by plaintiff to be made permanent. Defendants' motion for amended findings and conclusions was denied, and their motion for a new trial was granted upon the specific issue stated below on this page. From the order denying their motion for amended findings or for a new trial of all the issues in the action, defendants appealed. Affirmed.

*Arthur E. Arntson, Mohn & Mohn, Lucius A. Smith* and *James P. McMahon,* for appellants.

*Moonan & Moonan,* for respondent.

On June 29, 1920, the following opinion was filed:

PER CURIAM.

Motion to dismiss on the ground that the appeal is from a nonappealable order. Defendants moved the court for amendment of the findings of fact and conclusions of law and in case this was denied for a new trial. The court refused to amend the findings but granted a new trial on this issue only, viz.: "Are the defendants and each of them threatening and intending to enter upon and take possession of the plaintiff's said land lying west of said fence?" on the ground that a finding to the effect that they so did was not supported by the evidence. Defendants appeal.

Unless the sole issue upon which the new trial is to be had determines the action for or against defendants, regardless of whether the other findings of fact stand, the order must be held appealable. The record

is not here, but it hardly seems probable that the issue to be retried under the order can be the vital or determinative issue in the case. If there be other material findings of fact supporting plaintiff's cause of action or destructive of the defense which are not supported by evidence, defendants would be entitled to a new trial thereon, and the order denying a new trial as to those issues must be held appealable. The appellants here are evidently not appealing because of the granting of a new trial upon the one issue, but because it was denied as to the others. The motion to dismiss is denied.

On November 26, 1920, the following opinion was filed:

TAYLOR, C.

The counties of Rice and Goodhue started to improve the public highway along the townline which forms the boundary between the town of Northfield in the county of Rice and the town of Warsaw in the county of Goodhue. Plaintiff owns the northeast quarter of section 1 in the town of Northfield bounded on the east by the townline in question. Alleging that the counties threatened and were about to encroach upon his cultivated land adjoining the highway, plaintiff brought this action to restrain them from doing so. The sole question in dispute is as to the location of that part of the townline forming the boundary between section 1 in the town of Northfield and section 6 in the town of Warsaw. There is no controversy as to the location of the section post which marks the northeast corner of section 1 and the northwest corner of section 6, nor as to the location of the section post which marks the southeast corner of section 1 and the southwest corner of section 6. Defendants contend that the townline runs in a straight line from the southeast corner of section 1 to the northeast corner of that section. Plaintiff contends that the government surveyors, in making the government survey, placed the quarter-section post between these two sections at a point about one and one-half rods east of such straight line, and that the townline, instead of being straight, runs from the section post at the southeast corner of section 1 to this point, and from this point to the section post at the northeast corner of the section. The court found as

a fact that the quarter-section post was placed by the government surveyors at the point claimed by plaintiff, and hence that the townline between these sections follows the course claimed by plaintiff.

The government survey was made in 1854, but we have more evidence to show where this quarter-section post was actually placed on the ground than is usually obtainable in a prairie country after such a lapse of time. A fence was constructed in 1866 from the point where plaintiff claims that the government surveyors placed this quarter-section post to, or nearly to, the northeast corner of section 1. Other fences running south, east and west from this point were also constructed at an early date. From the earliest settlement the landowners on both sides of the line have taken this point as the true location of the quarter-section corner, and have located their boundary lines by this point and the two section posts, and have built their boundary fences according to the lines as so located. Mr. F. O. Rice, a surveyor who has been a resident of Rice county ever since 1858, testified that he made a survey of the line between section 1 in the town of Northfield and section 6 in the town of Warsaw for the landowners on each side of it about 1870; that he found and located this quarter-section post; that, though the top of the stake had been broken off, he found the bottom of it in the ground and also found the mound, trench and pits required by the government regulations, and that he remembered the facts particularly because he had never found any other quarter-section post so far out of line. The point where he located this post is the point claimed by plaintiff and found by the court as its true location. The highway in question was established as a judicial road in 1887, and was surveyed and platted by Mr. Rice who, in this survey, again located the quarter-section post at the same point. Shortly after the road had been laid out and established, the fence built in 1866, or what remained of it, was removed, and a new fence was constructed across the northeast quarter of section 1, approximately 2 rods west of the old fence, and has been maintained as marking the western boundary of the highway from that date until the present time, except that in 1910, by an arrangement between plaintiff and the towns, plaintiff moved the south part of his fence so as to allow an additional 6 feet for the road at that place. The highway has always been traveled along the line established by Surveyor Rice, and the

landowners have cultivated their farms up to the boundaries of the highway as so established. The evidence amply sustains the finding of the trial court.

Defendants made no attempt to show where the quarter-section post was located on the ground, nor that it was not in fact placed at the point claimed by plaintiff, but put the government plat and field notes in evidence and rely upon the fact that they show a straight line between the two section posts.

The government surveyors who surveyed this townline were required to set a section post every mile to mark the section corners, and to set a quarter-section post between each two section posts to mark the intervening quarter-section corners. And, as this was a prairie country, they were further required to build a mound about each post, to dig a trench on each side of it, and to dig pits at specified distances from it, to mark the location in a more substantial and enduring manner.

"It is the general rule here, as well as elsewhere, that courses, distances and descriptions must yield to actually existing monuments, or to the site of their former location, if clearly established. Chan v. Brandt, 45 Minn. 93, 47 N. W. 461. See also Yanish v. Tarbox, 49 Minn. 268, 51 N. W. 1051. And it is the established rule that the true corner of a government subdivision is where the United States surveyor established it, whether this location is right or wrong. Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740. In view of what was said in the case first cited in respect to the site of lost monuments (although section 836, supra, was not then under consideration), it would seem to be settled in this jurisdiction that if, for any cause, the original government post or monument has disappeared, its location can be ascertained by competent evidence, and thus established; and, if clearly and satisfactorily so established, the site of such location will govern and control as fully as if the original remained in position." Beltz v. Mathiowitz, 72 Minn. 443, 75 N. W. 699.

"In the public land surveys the corners of government subdivisions are where the government surveyors correctly or mistakenly place them; and errors in their location cannot be corrected by the courts. Chan v. Brandt, 45 Minn. 93, 47 N. W. 461; Beardsley v. Crane, 52 Minn. 537,

54 N. W. 740; Beltz v. Mathiowitz, 72 Minn. 443, 75 N. W. 699. If their location can be determined, they control.

"A lost corner is one whose location, as established by the government surveyors, cannot be found. If its location, though evidence of it on the ground is gone, can be determined satisfactorily by competent evidence, it is not a lost corner. The fact that evidence of the physical location of a corner cannot now be seen, or that no one who saw the marked corner is produced, does not necessarily make the corner a lost one. If the evidence is such that the place where the corner was can be determined, it is enough." Goroski v. Tawney, 121 Minn. 189, 141 N. W. 102. This is the universal rule. Ayers v. Watson, 137 U. S. 584, 11 Sup. Ct. 201, 34 L. ed. 803; Kohlmorgan v. Rosell Tp. (S. D.) 169 N. W. 229; Larson v. Edison Township (S. D.) 169 N. W. 523; Peterson v. Skjelver, 43 Neb. 663, 62 N. W. 43; Hurn v. Alter, 80 Neb. 183, 113 N. W. 986; Britton v. Ferry, 14 Mich. 53; Hess v. Meyer, 73 Mich. 259, 41 N. W. 422; Billingsley v. Bates, 30 Ala. 376, 68 Am. Dec. 126; Granby M. & S. Co. v. Davis, 156 Mo. 422, 57 S. W. 126; Climer v. Wallace, 28 Mo. 556, 75 Am. Dec. 135; Washington Rock Co. v. Young, 29 Utah, 108, 80 Pac. 382, 110 Am. St. 666; Kilgore v. Carmichael, 42 Ore. 618, 72 Pac. 637; Tarpenning v. Cannon, 28 Kan. 665; Fisher v. Bennehoff, 121 Ill. 426, 13 N. E. 150; England v. Vandermark, 147 Ill. 76, 35 N. E. 465; McEvoy v. Loyd, 31 Wis. 142; Greer v. Squire, 9 Wash. 359, 37 Pac. 545; Nesselrode v. Parish, 59 Iowa, 570, 13 N. W. 746; Doolittle v. Bailey, 85 Iowa, 398, 52 N. W. 337; Watrous v. Morrison, 33 Fla. 261, 14 South. 805, 39 Am. St. 139.

If the point where the government surveyors established a post or monument to mark a corner or line cannot be located on the ground, then the courses and distances shown on the plat and field notes furnish a guide for locating it. Sommer v. Meyer, 125 Minn. 258, 146 N. W. 1106. Defendants cite many authorities to the effect that the official plat and field notes are controlling and conclusive under the state of facts existing in those cases. But those were cases in which the place where the corner or monument was located on the ground could not be established, or cases in which no post or monument was in fact ever placed on the ground. We do not question the correctness of those decisions,

but they are not in point. None of them hold that the courses and distances shown on the plat and field notes will control as against a corner or boundary line which was actually located on the ground by the government surveyors. If the location of such a corner or line is satisfactorily established and does not accord with the courses and distances on the plat and field notes, such courses and distances must give way to the location actually marked on the ground. See cases cited supra.

As the location of the original government post was found and determined, and this location accords with the line recognized and acquiesced in by the owners of the adjoining lands, there is no occasion to consider the effect of the long continued practical location of the line.

We find no other matters requiring special mention.

Order affirmed.