### W, S. MOSCRIP v. WEBSTER LUMBER COMPANY.[1]

June 19, 1925.

No. 24,602.

**Apportionment of excess length of boundary line correct.**

The court properly ruled that the survey, which apportioned the excess length of the north boundary line, found in a fractional section bordering Leech lake, ratably between distances given in the field notes for that line between the northwest corner of the section to the quarter post, and that given for the distance between the quarter post and the intersection of the north boundary line with the lake, was correct.

1. See Boundaries, 9 C. J. p. 166, § 19.

Action in the district court for Ramsey county. The case was tried before Boerner, J., and a jury which returned a verdict for $3,808.65. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*A. R. Chesnut* and *George S. Grimes*, for appellant.

*Mitchell, Doherty, Rumble, Bunn & Butler*, for respondent.

HOLT, J.

Action for wilful trespass in entering plaintiff's land and cutting and removing trees therefrom. The court directed a verdict for plaintiff, but left the jury to determine the amount. Defendant moved for judgment non obstante or a new trial, and appeals from the order denying the motion.

Plaintiff bought the northeast quarter of the northwest quarter and lot 2 in section 33, township 144, range 29, from the United

[1] Reported in 204 N. W. 326.

States, receiving a patent thereof in December, 1922, about a month before the alleged trespass. The government had held the title in trust for an Indian allottee. The patent recites that the whole tract contains 73 25/100 acres. Defendant had some timber to cut in section 28, the section bordering section 33 on the north, and claimed the right to also log lot 1 of section 33 immediately to the east of the northeast quarter of the northwest quarter owned by plaintiff. There is no question but that defendant cut some timber south of the north boundary line of section 33. The dispute is concerning the location of the quarter post on that line.

The township was surveyed in 1873 by one Conger under the direction of the United States. The plat made by Conger shows section 33 to be fractional and bounded on the easterly side by the waters of Leech lake. The original northwest and southwest corners are identified and located. Also the location of the southeast meander corner is not in serious doubt, that being 4 chains due east from the southwest corner. It is in the waters of the lake, but in 1901, when the shore was meandered and surveyed by the government to obtain flowage rights for the flood control by a dam at the outlet of Leech lake, the witness trees were there, and the corner was then located by Mr. Dunaway, who was making the survey. There were two surveys made after the trespass, the one by Mr. Dunaway and the other by Mr. Kibbie. The latter was rejected by the court as not made on correct principle in relocating the north quarter post, and the Dunaway survey was accepted as correct. None of the original quarter posts in section 33 have been found or their places located on the ground. Nor have the original northeast or southeast corners of section 28 been ascertained. A straight line drawn from the southwest corner to the northwest corner of section 33 bears west 17° 12′, so that the northwest corner is in fact 1,634 feet further west than the southwest corner. The field notes of the Conger survey call for a quarter post on the north line of section 33, 40 chains east of the northwest corner, and for a meander corner post where the north line of the section intersects the lake 62.51 chains east of the northwest corner thereof. The actual distance from the northwest section corner to the lake on the

north boundary line is 7,465 feet instead of 4,125.66 feet or 62.51 chains as stated in the field notes. In the Dunaway survey this excess length of over 3,300 feet was apportioned between the 40 chains and the 22.51 chains ratably, thus placing the north quarter post 4,827.2 feet east of the northwest corner of section 33 instead of 2,640 feet, and the distance thence east to the meander corner intersecting the lake as 2,617.8 feet instead of 1,485.66 feet or 22.51 chains, as called for by the field notes. The Kibbie survey placed the quarter post 2,640 feet east of the northwest section corner.

If this is a case for the apportionment of excess territory in a section where the original quarter post cannot be found or its place located, the Dunaway survey correctly placed it under the rules promulgated under Federal authority and as accepted and followed in Kleven v. Gunderson, 95 Minn. 246, 247, 104 N. W. 4; Goroski v. Tawney, 121 Minn. 189, 141 N. W. 102; Sommer v. Meyer, 125 Minn. 258, 146 N. W. 1106. The three corners of this fractional section as originally placed are known and control its subdivision, especially if the remaining unknown northeast corner can be located at the intersection of the north boundary line of the section with the lake shore. The difficulty and discrepancy is the excess distance of the north boundary line from the northwest corner to its intersection with the lake shore. A great deal of this error, namely, 1,634 feet, is due to the improper course of the west line of the section and the balance to faulty meandering of the shore line from the southeast meander corner to the northeast meander corner thereof.

The reason for adopting the Dunaway survey apportioning the excess is: The original section corners placed by the government survey must remain where found no matter how incorrectly placed, and they control the subdivision of the section if the original quarter posts cannot be ascertained. Ferch v. Konne, 78 Minn. 515, 81 N. W. 524; Lawler v. Counties of Rice and Goodhue, 147 Minn. 234, 238, 178 N. W. 317, 180 N. W. 37. In relocating the lost northeast meander corner of this section we are met by two inconsistent calls in the field notes, viz.: The distance given, and the intersection with the lake. The latter is a natural monument and should prevail

over the distance given. The lake never extended to the point 62.51 chains east of the northwest corner of the section. At that point is high land covered by an old forest, which does not at all correspond with the character of the ground where the field notes state the meander corner was placed, for the witness trees are a dead cedar and a dead tamarack, and the ground is described as "timber all dead and much of it fallen. Soil unfit for cultivation." The above fits the description of the land where the north line of the section intersects the lake. It is also to be borne in mind that where a fractional section of subdivision borders meandered waters, the water, and not the meander line, constitutes the boundary of the land. The rule for the subdivision of a section of known corners but lost quarter posts has been so frequently stated and applied that we need only refer to the more recent cases of Kleven v. Gunderson, supra; Goroski v. Tawney, supra; and Sommer v. Meyer, supra. Accordingly, the Dunaway survey, accepted by the court, was correct and controls unless the Conger survey must be held fraudulent and void.

Appellant relies on Security Land & Exp. Co. v. Burns, 87 Minn. 97, 91 N. W. 304, 63 L. R. A. 157, affirmed in 103 U. S. 167, 24 Sup. Ct. 425, 48 L. ed. 662. There no actual survey of the interior of the township was made, and the court so found. No section lines within the township were run by the surveyor, and no section corners, or quarter posts were located, established or marked by him, with the possible exception of one section corner, nor were any of the streams or lakes meandered. Such a pretended survey was a fraud on the government, and not merely incorrect or negligently made. In the same class may be placed the survey involved in Jeems Bayou Club v. United States, 260 U. S. 561, 43 Sup. Ct. 205, 67 L. ed. 402. In Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. 124, 44 L. ed. 171, the line claimed as a shore boundary was not a meander line at all, but a boundary between the land surveyed and a "flag marsh." As examples where somewhat gross inaccuracies did not vitiate the government survey may be cited Olson v. Thorndike, 76 Minn. 399, 79 N. W. 399; Hanson v. Rice, 88 Minn. 273, 92 N. W. 982; Mitchell v. Smale, 140 U. S. 406; United

States v. Lane, 260 U. S. 662. In the Conger survey there was an actual establishment of section corners in the township, for quite a number have been found, as well as a few quarter posts. The survey was no doubt negligently done, resulting in inaccuracies, but there is no evidence that what was done or left undone therein was for a fraudulent purpose. His plat of the township shows the usual rectangular sections, but also shows section 33 to be fractional and bounded on the east by the lake shore. Some of the fractional sections on the west of the township abut the shore line of the lake on that side, and the evidence is to the effect that in those sections the distance measurements fall short.

A great many assignments of error are directed to rulings on testimony bearing on the market value of the timber cut, considered in the shape of stumpage, logs and the lumber sawed. Rulings on these matters should not cause a new trial, for the complaint as finally amended was for the recovery of the diminished value of the whole tract conveyed by the patent by reason of the cutting down the trees upon about 25 acres thereof. While the value of the stumpage, logs and lumber may be considered by the jury in fixing permanent damages to the land as a whole, it is far from controlling. Moreover, our examination of the record discloses no grave errors in the rulings upon the trial of which appellant may justly complain. Most all of such assignments of error are not touched upon in the brief, and should not be considered as presented by the appeal.

In view of the trial court's holding the Dunaway survey controlling, no prejudice could result from the evidence received that the government after being apprised of the inaccuracies in the Conger survey refused to order a resurvey.

On the motion for a new trial newly discovered evidence was made a ground. This newly discovered evidence, or rather the fact of a subsequent event, was that a resurvey of the township by the government had been made since the trial. There was no claim that such resurvey had as yet been approved by the proper authority. But such resurvey cannot affect the rights of those to whom land was patented prior thereto, and is immaterial here. Burton v.

Isaacson, 122 Minn. 483, 142 N. W. 925. The act of Congress of March 3, 1909, chapter 271 (35 St. 845), authorizing resurveys provides: "That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement." United States v. State Invest. Co. 264 U. S. 206, 44 Sup. Ct. 289, 68 L. ed. 639. The effect of such resurvey upon the title passed from the government prior thereto is also treated in Noble v. Union River Logging R. Co. 147 U. S. 165, 13 Sup. Ct. 271, 37 L. ed. 123.

The order must be affirmed.