KOHLMORGAN, Respondent v. ROSWELL TOWNSHIP,
MINER COUNTY et al
(LEITH, Intervener, Appellant).

(169 N. W. 229).

(File No. 4337. Opinion filed Nov. 4, 1918).

(1).    Appeals—Error—Disputed Boundary—Intervener, Relief Granted Against, Estoppel to Allege Error.

Where, in a suit to restrain opening of highway, involving a disputed boundary line, defendant intervener asked that boundary line be determined, and against whom and defendant township officers judgment was rendered granting the relief prayed for, held, that the intervener cannot for the first time upon appeal from the judgment, question trial court's right to grant such relief; each party by pleadings having assumed that, if boundary was as claimed by such party, he was entitled to equitable relief; the evidence showing that the boundary was as claimed by plaintiff, and that intervener had torn down plaintiff's fences under claim of right to do so.

(2).    Appeals—Error—Adjudication Re Disputed Boundary, Intervener's Prayer For—Harmless Error Re Intervener.

In a suit to enjoin opening of a highway, involving a disputed boundary line, in which judgment was rendered granting relief as against highway officers and an intervener who had prayed an adjudication of the boundary line, held, that such judgment was in no way prejudicial to intervener, if court rightfully located such boundary.

(3).    Boundaries—Obliterated Corner—Field Notes, Presumption of Correctness Of.

It is to be presumed that government field notes are correct, and that where they place the quarter corner on a direct line

between section corners, that the corner as actually located was on such line; that clear and satisfactory proof of its location elsewhere is necessary, to justify court in finding it was so located.

(4). **Boundaries—Obliterated Corner—Witnesses' Positive Testimony to Corner Not on Old Road—Obliterated, Not "Lost" Corner, Evidence, Sufficiency.**

On the question whether an "obliterated" corner was located upon the direct line between section corners; no witness having sworn that he ever saw a government mound upon such line, while four witnesses testified positively that there had been a mound and pits at a point some distance south of said line, some of the latter testimony tending to show that an old road on said line was very close to said mound, **held,** that the evidence was sufficient, and bound trial court to find, that the original corner, seen by the last-mentioned witnesses was obliterated, and not a "lost" corner.

Smith, J., not sitting.

Appeal from Circuit Court, Miner County. Hon. Alva E. Taylor, Judge.

Action by Henry Kohlmorgan, against Roswell Township, Miner County, and Philip Brod and others, Supervisors of said Township, in which William Lieth intervened. From a judgment granting relief as prayed for by plaintiff, against both defendant and intervener, the intervener appeals. Affirmed.

*Caldwell & Caldwell, E. H. Wilson,* and *Baldwin & Lyons,* for Appellant.

*W. E. Weygint,* and *A. W. Wilmarth,* for Respondent.

(3) To point three of the opinion, Appellant cited:

Hanson v. Township of Red Rock, 4 S. D., 358; Coulter v. Gudehus; 30 S. D., 616.

Respondent cited:

Dowdle v. Cornue, 9 S. D., 126; Unzelmann v. Shelton, 19 S. D., 389.

(4) To point four, Respondent cited:

Wentzel v. Claussen, 26 S. D. 93; Mills v. Lehman, 28 S. D., 347.

WHITING, P. J. Plaintiff was the owner of land on the south side of a section. He claimed that the quarter corner was at a point 59 feet south of a direct line between the section corners, and he had erected a fence along his claimed boundary line. The defendants, claiming that the quarter corner was on a straight line between the section corner, had taken steps looking to the re-

moval of plaintiff's said fence and the establishing of a highway 2 rods wide on each side of a straight line between the section corners. Plaintiff brought this action to restrain defendants from opening up a highway as threatened. Defendants answered, alleging the boundary of plaintiff's land to be the "straight" line, admitting that they had taken steps looking to the opening of a highway as alleged by plaintiff, alleging that plaintiff was obstructing the legal highway, and themselves asking equitable relief in the nature of a mandatory order requiring plaintiff to remove obstructions from such highway. Intervener is the party owning the land adjoining that of plaintiff on the south. He claimed the true boundary to be as alleged by defendants. He asked that the boundary line be established by the court, and that a mandatory order, as prayed for by defendants, be issued. He also asked general equitable relief. The true location of the disputed boundary depends solely upon whether the quarter corner, as established by the government survey, had become lost, or whether it had merely become obliterated. If this corner had, previous to this controversy, become a "lost" corner, it was clear from the evidence that it had thereafter, and before this action arose, been properly located on the "straight" line. If this corner were never a "lost" corner, but merely an "obliterated" corner, as claimed by plaintiff, then it was plaintiff's contention that such corner had been properly located at the point claimed by plaintiff as the quarter corner. The cause was tried to the court; the court submitting special interrogatories to a jury. The jury found that the quarter corner was never "lost," and that its true location was as claimed by plaintiff. The trial court adopted the jury's findings, and made further findings favorable to plaintiff. Conclusions and judgment were entered thereon. The judgment granted the equitable relief asked for by plaintiff, and granted such relief as against both defendants and intervener. From such judgment, and an order denying a new trial, the intervener appealed.

[1, 2] Upon this appeal, appellant for the first time questions the right of the trial court to grant the equitable relief, because of lack of proofs warranting same. There is no merit in this contention. Not only did each party by the pleadings, take the position that, if the boundary was as claimed by such party, such party was entitled to equitable relief of the nature granted, thus virtually

conceding that, if the boundary was as claimed by the adverse party, such relief should be granted such party, but there was ample evidence that intervener had torn down plaintiff's fence and taken the position that he had a right to tear it down. Moreover, by its judgment the court determined the location of the boundary as intervener had asked it to, and the injunctional relief granted against intervener was in no manner prejudicial to interevener, if the court rightfully located such boundary.

[3, 4] The meritorious question in this case is whether the trial court properly located the quarter section corner. Appellant contends, and rightfully, that it is to be presumed that the government field notes are correct, and that where such notes place the quarter corner on a direct line between section corners it will be presumed that the corner, as actually located, was on such line, and that it will take clear and satisfactory proof that it was located elsewhere to justify a court in finding that it was located other than on such line. No witness swore that he had ever seen a government mound, or what he thought to be a government mound, upon the direct line between the section corners; but there were four witnesses other than plaintiff who swore positively that there were formerly a mound and pits, answering the description of government mounds and pits, located at a point some distance south of a straight line running between the section corners. One of these witnesses had known of this mound ever since he was a boy. He testified positively to seeing this mound in 1909; that this mound was in the field which a party was then breaking; and that it was so located that, in breaking such field, the mound would be and was destroyed. He testified to the location of this mound in relation to said breaking, and also testified to its location in reference to a road that formerly ran from section corner to section corner, and which passed very close to the mound. The other witness also testified to its location in relation to the old road. There was oral testimony as to, and an exhibit showing, parts of said old roadway both to the west and the east of the field that had been broken. We are satisfied that there was sufficient evidence from which the trial court could find, and from which it was clearly bound to find, that the original government corner had become obliterated, and that such corner had been seen by these witnesses. It was therefore not a "lost" corner. The only possible

question that could fairly arise under the evidence was as to the exact location of such "obliterated" corner. It certainly cannot be contended that, merely because a quarter corner has become "obliterated," and the exact location thereof cannot be fixed, the courts must treat the same as though it were a "lost" corner, and locate it on a direct line between the section corners. It is clear that the trial court located this "obliterated" corner in accordance with the evidence and without possible dispute within at least 2 or 3 feet to the north or south of the true line as fixed by the government survey. If there was any material variation from the true location, it would, under the evidence, appear to be a variation to the east or west of the true location; but such variation is immaterial, so far as the rights of the parties hereto appear under the record before us—it not appearing that there is any dispute as to the location of the north and south boundary, and a variation of a few feet east or west in the exact location of such quarter corner would but very slightly change the boundary line in dispute.

The judgment and order appealed from are affirmed.

SMITH, J., not sitting.